# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

Jessica Hurtt,              )
                         )
     Plaintiff,         )
                         )    C.A. No.: N18C-05-201 SKR
     v.                )
                         )
Del Frisco's Restaurant Group,  )
                         )
     Defendant.       )

Submitted: March 20, 2019
Decided: June 18, 2019

*Upon Defendant Del Frisco's Restaurant Group's*
*Motion to Dismiss and Compel Arbitration*: **GRANTED**.

Arinderjit Dhali, Esq., Dhali & Reimer PLLC, Washington D.C., Kristen S. Swift, Esq., Tybout, Redfearn & Pell, Wilmington, DE, Attorneys for Plaintiff.

James T. McBride, Esq., Jonathan C. Wilson, Esq., Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Dallas, TX, Patricia R. Urban, Esq., Pinckney, Weidinger, Urban & Joyce LLC, Greenville, DE, Attorneys for Defendant.

**Rennie, J.**

## MEMORANDUM OPINION

Plaintiff, Jessica Hurtt ("Hurtt"), brought this action against defendant Sullivan's of Delaware, Inc.[1] ("Sullivan's"), Hurtt's former employer. Hurtt alleges that Sullivan's violated the Delaware Discrimination in Employment Act. Now before the Court is Sullivan's Motion to Dismiss and Compel Arbitration. In its Motion, Sullivan's contends that the case should be dismissed for lack of subject matter jurisdiction, based on an arbitration agreement between Hurtt and Sullivan's.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 23, 2018, Hurtt filed this action[2] against Sullivan's, alleging various violations of her civil rights under Delaware's Discrimination in Employment Act, including racial and sex discrimination, hostile work environment, retaliation, and failure to accommodate religious beliefs.

Hurtt was employed by Sullivan's as a server/bartender from January 2016 to January 2017. Sullivan's requires every job applicant to fill out an Employment Application, and every new employee, as a precondition to their employment, to execute a number of documents.[3] All of these documents are accessed and executed

---

[1] In the Complaint, Hurtt listed "Del Frisco's Restaurant Group" as the defendant. Sullivan's, in its Motion to Dismiss, averred that the defendant was misidentified, and the proper defendant in this case should be "Sullivan's of Delaware, Inc." Hurtt does not object to this change.

[2] Complaint (Trans. ID. 62062035).

[3] Sullivan's produced those documents that pertain to Hurtt at the evidentiary hearing. *See* Defendant's Exhibits B-J of the March 20, 2019 Hearing (hereinafter referred to as "Def. Ex. ___"). These documents include "Employment Application," "Availability Sheet," "Pay Selection Sign-up / Authorization Form," "Emergency Contact Information," "Employee Setup Worksheet,"

2

via an electronic on-boarding system called talentReef.[4] An affidavit[5] (the "talentReef Affidavit") from talentReef's Enterprise Account Manager, the custodian of records for talentReef, states that every potential employee of talentReef's customers, such as Sullivan's, must create a unique account to apply for open jobs, including filling out the Employment Application.[6] Once hired, the new employee is required to complete new hire paperwork through that unique account.[7] To create a unique account, the employee must set up her own "log in credentials," which includes a password known solely by the employee.[8] The password is required every time the employee logs into her account.[9] Also, the password is required in each instance that the employee's electronic signature is requested for a specific document.[10]

Among the various documents that a new employee is required to sign when hired by Sullivan's is a Mandatory Arbitration Agreement and Procedure for Resolving Disputes Arising Out of Its Employees' Employment or Termination of Employment (the "Arbitration Agreement"). The Arbitration Agreement contains a

---

"HIPAA Initial Notice," "Mandatory Arbitration Agreement," "Employment Eligibility Verification (I-9 Form)," and "Employee's Withholding Allowance Certificate (W-4 Form)."

[4] Motion to Dismiss and Compel Arbitration ("Mot. to Dismiss"), Ex. 1, Affidavit of Robyn Martin (Trans. ID. 62182892).

[5] Def. Ex. K.1, talentReef Affidavit ("talentReef Aff.").

[6] *Id.*, ¶ 5.

[7] *Id.*

[8] *Id.*

[9] *Id.* ¶ 6.

[10] *Id.*

3

provision which states that the new employee and Sullivan's agree to resolve claims under Delaware's Discrimination in Employment Act through binding arbitration, and the parties are precluded from raising such claims in any federal or state court.[11] In addition to the Arbitration Agreement, the Employment Application references binding arbitration. That document specifically requires a job applicant, such as Hurtt, to confirm that she understands that the employment with Sullivan's is "conditioned upon [her] agreement to abide by the [Arbitration Agreement]."[12]

On June 27, 2018, Sullivan's moved to dismiss the case for lack of subject matter jurisdiction pursuant to Superior Court Civil Rule 12(b)(1). In its Motion, Sullivan's contends that Hurtt signed the Arbitration Agreement when she was initially employed by Sullivan's. Sullivan's asserts that, by signing the Arbitration Agreement, Hurtt agreed to arbitrate any disputes arising out of her employment with Sullivan's, including the claims pending in this case.

Hurtt filed an Opposition to Sullivan's Motion. Hurtt does not dispute that the claims raised in her Complaint are encompassed by the Arbitration Agreement. Hence, if the Arbitration Agreement is found to be applicable, Hurtt would be unable to pursue her claims in this Court. Rather, Hurtt contends that she was not aware of the Arbitration Agreement and did not sign it. As a result, Hurtt asserts that there is

---

[11] Def. Ex. H, Arbitration Agreement at A.1.
[12] Def. Ex. B, Employment Application at 5.

4

no binding arbitration agreement that precludes the Court from hearing her case. On March 20, 2019, the Court held an evidentiary hearing[13] to resolve the factual disputes surrounding whether or not Hurtt signed the Arbitration Agreement. After considering the testimony and documentary evidence received at the hearing, the Court finds that the Arbitration Agreement is applicable to Hurtt, and therefore deprives the Court of subject matter jurisdiction in this case.

## II. STANDARD OF REVIEW

"A motion to dismiss based on an arbitration clause goes to the Court's subject matter jurisdiction over the dispute."[14] In Delaware, the power to compel arbitration lies exclusively with the Court of Chancery, but this Court has the authority to determine whether a valid and enforceable arbitration agreement exists for purposes of determining whether it has subject matter jurisdiction.[15] The burden of establishing the Court's jurisdiction rests with the plaintiff.[16] In reviewing such a motion, the Court may consider documents outside the complaint.[17] And "where the

---

[13] Transcript for March 20, 2019 Evidentiary Hearing ("Hearing Transcript") (Trans. ID. 63373089).

[14] *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 429 n.15 (Del. Ch. 2007) (internal citation omitted) ("Delaware courts lack subject matter jurisdiction to resolve disputes that litigants have contractually agreed to arbitrate.").

[15] *Jones v. 810 Broom St. Operations LLC*, 2014 WL 1347746, at *1 (Del. Super. Apr. 7, 2014) (internal citations omitted).

[16] *Maloney-Refaie v. Bridge at Sch., Inc.*, 958 A.2d 871, 882 (Del. Ch. 2008) (internal citations omitted) (stating that, unlike a Rule 12(b)(6) analysis, the Court's review of a Rule 12(b)(1) motion is far more demanding of the plaintiff).

[17] *NAMA Holdings*, at 429 n.15.

plaintiff's jurisdictional allegations are challenged through the introduction of material extrinsic to the pleadings, [the plaintiff] must support those allegations with competent proof."[18]

### III. DISCUSSION

Sullivan's produced, among other documents, the Arbitration Agreement purportedly signed by Hurtt. The Arbitration Agreement bears an electronic signature of "Jessica Hurtt-Dunkley," and a date and time of January 26, 2016, at 5:05:22 P.M. EST. Hurtt acknowledged that, upon her employment with Sullivan's, she filled out and signed all the forms and documents that were introduced by Sullivan's at the hearing, with the exception of the Arbitration Agreement and the W-4 Form.[19] Hurtt asserted that she had never seen the Arbitration Agreement, and thus could not have signed it.

As indicated above, the burden is on Hurtt to provide "competent proof" that she did not sign the Arbitration Agreement. Throughout Hurtt's testimony at the hearing, she suggested that a document with an electronic signature could easily be fabricated. In her own affidavit, Hurtt stated that "[i]t [wa]s my belief that someone else typed in [my name] without my authorization [sic] in the Arbitration

---

[18] *K&K Screw Prods., LLC v. Emerick Capital Invs., Inc.*, 2011 WL 3505354, at *6 (Del. Ch. Aug. 9, 2011) (internal citation omitted).

[19] As to the W-4 Form, Hurtt admitted that she signed one, but denied that the W-4 Form produced by Sullivan's as Def. Ex. J was the one that she signed.

6

Agreement."[20]    However, Hurtt did not produce any affirmative evidence to demonstrate that the signature was fabricated.  On the contrary, the talentReef affidavit states that the Arbitration Agreement could only be signed through a unique account accessible solely to Hurtt herself.  In lieu of providing direct evidence that her signature was fabricated, Hurtt raised certain suspicions about the signature as it appears on the Arbitration Agreement, and attempted to invalidate the Agreement on those bases.

First, Hurtt stated that she would never have signed the Arbitration Agreement with the name "Jessica Hurtt-Dunkley."  Specifically, Hurtt contends that, although "Jessica Hurtt-Dunkley" is her legal name, she uses it only when completing official (federal or state) documents or when asked to provide her full legal name.[21]  For example, in official documents such as the I-9 Form and W-4 Form, "Jessica Hurtt-Dunkley" was entered in the name section; and in the "Pay Selection Sign-Up/ Authorization Form," although an unofficial document, because her full name was requested, Hurtt also entered "Jessica Hurtt-Dunkley."  But in unofficial documents such as the "Availability Sheet" and the "Employee Setup Worksheet," it was "Jessica Hurtt" that was used.  However, this alleged habit of reserving "Jessica Hurtt-Dunkley" only to official documents, even if true, does not bolster Hurtt's

---

[20] Def. Ex. A, Hurtt Affidavit ("Hurtt Aff."), ¶ 6.
[21] Hearing Transcript at 28:23–29:5, 33:5–33:9; *see also* Hurtt Aff., ¶ 6.

7

contention that she did not sign the Arbitration Agreement. Because the Arbitration Agreement, except for the signature section, does not contain another field that requested Hurtt's name, the Court cannot verify whether Hurtt signed it or not based solely on whether the name used to complete the document complied with Hurtt's alleged habit.

Hurtt also stated that she would never have electronically signed her name as "Jessica Hurtt-Dunkley" in any documents.[22] Hence, Hurtt suggests that the signature of "Jessica Hurtt-Dunkley" on the Arbitration Agreement would not have been authored by her. Notably, the I-9 Form, which Hurtt admitted that she had signed, clearly bears the signature of "Jessica Hurtt-Dunkley." This expressly contradicts Hurtt's testimony. Hurtt then provided an explanation for this inconsistency. She testified that, when electronically signing the new hire documents, she did not type in the signatures letter-by-letter, but rather they auto-populated.[23] For example, when she had typed "Jessica Hurtt-Dunkley" in the name section in a particular document, "Jessica Hurtt-Dunkley" would auto-populate in the signature section where she was required to sign. The same auto-pupulation occurred when she typed "Jessica Hurtt" in the name section.[24]

---

[22] Hurtt Aff., ¶ 6.
[23] Hearing Transcript at 45:18–45:22.
[24] *Id.* at 105:2–106:8.

Therefore, Hurtt contends that those "Jessica Hurtt-Dunkley" signatures were there solely because that name had been previously entered in the same document.[25]

The Court is not persuaded by Hurtt's explanation of the existence of the "Jessica Hurtt-Dunkley" signatures. The logical conclusion to be drawn from Hurtt's explanation is that the signature in a document would always be consistent with the name she previously typed in that same document. But this is not the case here. For example, in the "Pay Selection Sign-Up/Authorization Form,"[26] Hurtt was first requested to fill in her full name in the name section, where she typed "Jessica Hurtt-Dunkley." Based on Hurtt's theory, the signature in that document would have auto-populated as "Jessica Hurtt-Dunkley." However, the signature appearing there is actually "Jessica Hurtt." Because the auto-population theory fails in at least this one instance, there is no reason to believe that it can explain those "Jessica Hurtt-Dunkley" signatures. Therefore, the mere existence of a "Jessica Hurtt-Dunkley" signature could not be an indicator of whether a particular document, such as the Arbitration Agreement, was signed by Hurtt or not.

In addition to questioning the name she purportedly used to sign the Arbitration Agreement, Hurtt also questioned the time she purportedly signed it. The Arbitration Agreement shows that it was signed on January 26, 2016, at 5:05:22 P.M.

---

[25] *Id.* at 64:19–66:7.
[26] Def. Ex. D, Pay Selection Sign-Up/ Authorization Form.

EST. During cross-examination of Hurtt, Sullivan's attorney asked her whether she worked on that day. Hurtt initially denied that she worked that day.[27] Sullivan's then produced a time sheet[28] from its payroll system which shows that Hurtt attended a training session that day from 3:38 P.M to 8:52 P.M. Hurtt finally admitted that she attended that training session.[29]

Hurtt only reluctantly admitted that she was at Sullivan's on January 26, 2016 from 3:38 P.M. to 8:52 P.M., but she thereafter attempted to use this fact to support her contention that she did not sign the Arbitration Agreement. Specifically, Hurtt contends that she could not have signed the Arbitration Agreement at 5:05 P.M., because she would be in the middle of the training and had no time to sign the Agreement.[30] Hurtt stated that the first part of the training consisted of reading training materials and taking quizzes.[31] She further testified that, at approximately 4:45 P.M., after her initial training, she and the other servers conducted a "pre-shift," which was to prepare for the opening of the restaurant.[32] After the restaurant opened,

[27] Hearing Transcript at 78:2–78:19.
[28] Def. Ex. K.2, Time Sheet of Hurtt's Training Session on January 26, 2016.
[29] Hurtt tried to avoid directly admitting that she was at Sullivan's on January 26, 2016, by suggesting that she only confirmed this fact because "that's what [the time sheet] says." Hearing Transcript at 84:15–84:21, 110:6–110:10. But it is at least clear that, after Sullivan's introduced the time sheet, Hurtt stopped denying that she was at Sullivan's that day. Hurtt later even took advantage of the fact that she was in the training session at Sullivan's during the time period shown on the time sheet to bolster her own case.
[30] *Id.* at 113:11–113:21.
[31] *Id.* at 97:7–97:11.
[32] The "pre-shift" included things like getting familiarized with that day's specials and featured wines, tasting food, and wiping silverware, etc. *Id.* at 97:15–97:23.

which was between 5:00 P.M. and 5:30 P.M.,[33] Hurtt shadowed another server, as part of her training, until she left at 8:52 P.M. that night.[34] Hurtt also testified that she was extremely busy from around 4:45 P.M. until she left, and thus could not have signed the Arbitration Agreement during that timeframe.[35]

Except for her own denial of signing the Arbitration Agreement, Hurtt did not, however, provide any other evidence to corroborate that testimony. Hurtt admitted that she had internet access through her cell phone that day.[36] Thus, Hurtt could not deny that she, at least, possessed the capability to sign the Arbitration Agreement through the online talentReef system.

To further support her contention that she did not and could not have signed the Arbitration Agreement at around 5:05-5:06 P.M. on January 26, 2016, Hurtt stated that, the only other document[37] purportedly signed by her around that time, the W-4 Form, was also fabricated. She contends that several sections of the W-4 Form were filled out in a way that appeared suspicious, the first of which was the address section. Hurtt testified that the address on the W-4 Form was not her address

---

[33] Hurtt first testified that Sullivan's did not open "until five, or a little bit later." *Id.* at 112:3–112:4. She later clarified that time to be "[e]ither 5:00 or 5:30." *Id.* at 112:23–113:4.

[34] *Id.* at 113:22–115:5. Hurtt stated that although she was shadowing another server, she was very hands-on and did all things a server/bartender at Sullivan's was required to do, including making wine, preparing salad and desserts. *Id.* at 114:8–114:16.

[35] *Id.* at 113:11–115:5.

[36] *Id.* at 102:7–102:8. Hurtt also assumed that the computer in the manager's officer had internet access because there was Comcast cable at Sullivan's. *Id.* at 100:13–100:21.

[37] All the other new hire documents produced by Sullivan's, which Hurtt admitted that she had signed, were signed between 12:25 P.M. and 12:35 P.M. on January 26, 2016.

and is inconsistent with the addresses used on the other documents.[38] She testified that the address on the W-4 Form was in fact her mother's address, and that the same address was listed on her passport, a copy of which she had provided to Sullivan's.[39] Hurtt appears to suggest that someone at Sullivan's used the address information on her passport to fabricate the W-4 Form. Hurtt also questioned the appearance of her signature on the W-4 Form. That signature, "Jessica Hurtt-Dunkley," has a capital letter "D"; while the name used in the name section in the same document is "Jessica Hurtt-dunkley," with a lowercase "d." According to Hurtt, this inconsistency shows that this document was not created by her, because when she was filling out these documents the signature auto-populated to be consistent with the previously entered name.

Hurtt's reliance on the alleged discrepancies on the W-4 Form is misguided. Using her mother's address in this particular document, although unwonted, as she used her own address in the other documents, does not *per se* demonstrate that this document was fabricated. Hurtt's contention regarding the signature is also unpersuasive, as it was based on the auto-population theory which the Court, in this Opinion, has already found to be inconclusive. Moreover, Hurtt admitted that the number of tax exemptions entered in the W-4 Form, a number that could not be

---

[38] *Id.* at 67:21–68:1.
[39] *Id.* at 103:21–104:5, 53:16–53:18.

easily obtained or guessed by others, was consistent with what she had regularly used, which corroborates the fact that the W-4 Form produced by Sullivan's was exactly the one Hurtt had signed. Hurtt's claim of fabrication, without additional proof, is unfounded.

In conclusion, Sullivan's has made a *prima facie* case that challenges the Court's subject matter jurisdiction. Sullivan's produced the Arbitration Agreement with Hurtt's electronic signature. Sullivan's produced an affidavit from the third-party provider of the on-boarding system, talentReef, that verifies that the Arbitration Agreement could only be accessed and signed through a unique account created by Hurtt herself. Sullivan's also produced the Employment Application, which Hurtt admitted that she had reviewed and signed. And the Employment Application explicitly gave Hurtt a preview that her employment would be conditioned upon the signing of the Arbitration Agreement.

Hurtt, who has the burden of proof in this jurisdictional dispute, has failed to meet her burden. Other than simply denying that she had signed the Arbitration Agreement, Hurtt has failed to provide any reliable evidence to demonstrate that she was not the signator on that Agreement. Hurtt attempted to raise some suspicions and concerns about the signature and the time of signing, but much of Hurtt's testimony and explanations on those points are inconsistent and do not reconcile

13

with each other.  Hence, the alleged suspicions do not constitute "competent proof" that the Agreement was not signed by her.

## IV.  CONCLUSION

Based on the foregoing, the Court finds that Hurtt failed to carry her burden of establishing that she did not sign the Arbitration Agreement.  Therefore, her claims asserted in this action are subject to mandatory arbitration.  The Court does not have subject matter jurisdiction over those claims, and Sullivan's Motion to Dismiss and Compel Arbitration is hereby **GRANTED**.[40]

**IT IS SO ORDERED.**

_____
Sheldon K. Rennie, Judge

---

[40] Although Sullivan's Motion was titled as "Motion to Dismiss and Compel Arbitration," Sullivan's arguments in the Motion were limited to that the Court has no subject matter jurisdiction.  Sullivan's did not seek to "compel" arbitration of the disputes at bar through an order of this Court.  And as made clear previously in this Opinion, in Delaware, the power to compel arbitration lies exclusively with the Chancery Court.  Therefore, the Court here only dismisses the case, without in any way "compelling" the parties to seek arbitration.